Ruffin, C. J.
The first question in the case is upon the plea; and we are of opinion, that it was properly rejected. It came too late. We suppose, from the circumstance of the commissions to take the answers, that the defendants both resided in Mississippi, and, probably, that Robert W. Tate died there, and the other defendant may have become his administrator there. But if that be so, which we only conjecture, still the party had precluded himself from the objection, that he was not answerable as administrator, by his vol *229 untary assumption of that character in this cause eighteen months before, and submitting to have the cause revived against him as administrator. It is true, it is not entered, as the formal order of the Court, that the cause shall stand revived. But it is substantially so. • The statute authorizes the reviving a suit in Equity, without bill, by scire facias; the object of which is, merely to give the requisite notice. The process may be waived, and the party appear without it; and that this party did. He expressly acknowledges his representative character, appears as such, and makes no objection to a revivor, and for eighteen months takes out process to take testimony in the cause, as having been revived. He thus became a party to the suit, and waived all objection to the jurisdiction and to his accountability as administrator.
Upon the main question in the cause, which is the right of the plaintiff to have an account against these parties, the opinion of the Court is for the plaintiff. It is yielded, as a matter of course, that the defendant James H., individually, as an acknowledged partner with the plaintiff, must come to an account. But it is said, that Robert W. Tate was not liable, and therefore, that his administrator is not, because the bill is not filed against him upon his liability as the agent of the firm, having its funds in his hands, but, as being himself one of the partners; whereas, in fact he was not a partner in any sense, neither with the plaintiff and James H. Tate, nor even with James H. Tate in respect of his moiety. If we are to judge from the manner in which the parties have taken their testimony, they must have been under a singular delusion on both sides, as to the grounds on which the plaintiff could have relief against Robert W. Tate. The plaintiff has taken many and very voluminous depositions to the acts and declarations of both the defendants, tending to establish, tbat-all three of the parties were originally copartners, or bécame so in this contract by subsequent agreement between the three, apparently under the belief thatsuch asíate of things was necessary to entitle the plaintiff to a decree against Robert W. *230 Tale. ' But that is á mistake, as a general principle of ^awl f°r defendant was liable to account, as having received the funds, either as the agent of the firm really existing and merely as agent, without any interest in himself; or as such agent, having also an interest, under a sepsrateagreement between him and one of the parties, in the share of .that partner. But, in truth, such evidence of a general partnership between the three cannot avail the plaintiff in the present suit: because the bill specially excludes the idea of a •partnership of that kind, and states that James H. Tate was the sole partner of the plaintiff, and that the interest of Robert W. Tate arose by an agreement between the brothers alone, and extended to the one half of James H. Tate’s moiety. On the other hand, the defendants have taken as many depositions to prove, some that Robert W. was agent only for the firm, consisting of his brother and the plaintiff, and others, that he was not a general partner with both of the other parties, but was then agent and concerned in interest in his brother’s share only, by a private agreement between those two alone, as if he could be held liable to account with the other defendant, to the plaintiff, only in case he were a general partner.
We are not prepared to say, that if Robert W. Tate were merely the agent, the bill is not so founded as to entitle the plaintiff to a decree against him to account, for it distinctly charges his general agency and management and sale of the property and receipt of the funds; and it is not perceived why the plaintiff’s rights arising from the facts should be impaired by untruly stating further, that, besides being agent, that person had an interest under his brother, and that he had also acted in the business by virtue of that interest.
But upon the question of fact, whether Robert W. Tate had an interest and the nature of it, the opinion of the Court is, that the statements of the bill are really according to the truth, as established by the evidence. The plaintiff has proved a great variety of declarations of both of the defendants, -when they were together and apart, and also conversa *231 tions between the plaintiff and the defendants, from which the witnesses collected, that all three of these persons were recognised by each of them as partners with each other; and so, perhaps, we might also conclude, if we were confined to that evidence itself. But the truth no doubt is,- that the parties, knowing that each had an interest, spoke of Robert W. Tate as an owner of a part of the line, as well as themselves, without being particular to designate the origin and nature of the respective interests, and from that the witnesses naturally enough concluded, that they were partners by joint agreement, whereby the plaintiff was half owner, and the other two a fourth each. But the bill admits, that there was no joint agreement, and states that Robert W. Tate became his brothers’ partner in his share, and, by virtue thereof, and by agreement with the other parties, became the general manager of the business, and got the effects of the firm into his hands. And that, in the opinion of the Court, is the effect of the weight of the evidence. It clearly establishes, that Robert W. Tate claimed to have an interest, as owner in some way or to some extent, and that other parties recognised such interest in him. Though many witnesses thought, from indefinite expressions dropt from the several parties, that Robert’s interest was that of a general partner, yet that was but an impression derived from loose declarations, not descending into particulars. Where the origin arid nature of Robert’s interest by itself became distinctly the subject of observation, the parties speak of it, as represented in the bill, to consist of one-fourth part derived out of the share of his brother by an agreement between them alone, but known to the plaintiff and recognized by him. Tcf that extent, Robert W. was the assignee Of James H. Tate; and there can be no doubt, that as a person having an interest, and also having the fund, he may be called- on to account to the plaintiff. Thus accounting, it is true, he will not be directly liable to the plaintiff for any losses sustained, if any there be, unless by his own fault as agent; because, although he might be liable for the contracts of the firm to third persons as a part- *232 yet he was not a partner with the plaintiff, as between themselves, to share the profit or loss. That was between the plaintiff and James W. Tate; and to the latter, Robert -W. was to look for a portion of his profits or make up a portion of his loss. For the same reason, to this case is not applicable the principle, that, except by agreement, an acting partner cannot claim compensation beyond his share oí the profits, for the rule proceeds on the ground, that the contract of partnership stipulates, what each is to contribute and receive, and, therefore, it cannot embrace a case, in which there is no contract of partnership between the plaintiff and the party rendering a service to the firm. No doubt, therefore, Robert W. Tate will be entitled to reasonable remuneration, as against the plaintiff, for his time and labor, or such as may have been fairly agreed on between him and the other parties. There must, therefore, be the usual decree for an account against the defendant in his own right, and as administrator of Robert W. Tate, and also, unless the defendant shall admit sufficient assets of his intestate, there must be an enquiry as to the assets which the defendant has or ought to have.
Per. Curiam, Decree accordingly.